**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Whaleco Incorporated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>employerdictionary.com, et al.,<br><br>　　　　Defendants. | No. CV-23-02354-PHX-ROS<br><br>**ORDER** |

Plaintiff Whaleco Inc. owns various trademarks containing the word "Temu" (collectively, "Temu marks"). Plaintiff alleges unknown individuals registered five domain names with Arizona-based GoDaddy.com, LLC. The five domain names are: 1) employerdictionary.com; 2) cryptocurrencybettting.com; 3) comboarchives.com; 4) toughestgirlalive.com; 5) and myelectronicshub.website. When registering these domain names, the unknown individuals contracted with Arizona-based Domains by Proxy, LLC, to keep confidential the personal information linked to the registrations.

According to Plaintiff, the unknown individuals who registered the domain names are operating websites at those domain names using the Temu marks without Plaintiff's permission. Plaintiff filed this suit, naming only the unknown individuals as defendants. The sole basis for personal jurisdiction identified in the original complaint was that the unknown individuals had contracted with GoDaddy and Domains by Proxy.

Plaintiff filed a motion for a temporary restraining order primarily seeking to require non-party GoDaddy "lock" the domain names such that they could not be transferred "to

another registrant or to a registrar located outside of the United States." (Doc. 10 at 10). Shortly after that motion was filed, the Court issued an Order requiring Plaintiff file a supplement establishing its basis for believing there was personal jurisdiction over the unknown individuals. The Court noted it was "highly improbable that every individual who registers a domain name with GoDaddy.com is subject to personal jurisdiction in Arizona in suits where GoDaddy is not a party." (Doc. 14 at 2). The Court also noted the present case presented unique jurisdictional issues compared to other recent cases involving similar claims because the present case did not involve any in rem claims against domain names.

On November 22, 2023, Plaintiff filed a supplement addressing personal jurisdiction as well as an amended complaint asserting in rem claims against the five domain names. The supplement argues Plaintiff was entitled to invoke the forum selection clauses in the unknown individuals' agreements with GoDaddy and Domains by Proxy. The supplement also argues the Court may exercise in rem jurisdiction over the domain names pursuant to 15 U.S.C. § 1125(d)(2)(a)(i). (Doc. 15 at 5). Plaintiff's latest filings do not establish a plausible basis for personal jurisdiction over the unknown individuals. In addition, Plaintiff's in rem claims against the domain names do not, at present, appear plausible.

Plaintiff's first argument for personal jurisdiction over the unknown individuals is that they executed contracts with GoDaddy and Domains by Proxy that contain forum selection clauses requiring litigation occur in Arizona. Plaintiff is not a signatory to those contracts, but Plaintiff argues it is still entitled to invoke the forum selection clauses. Non-signatories to a contract are able to invoke a contract's forum selection clause under some circumstances. *See, e.g.*, *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). But the ability of a non-signatory to do so is limited by what has become known as the "closely-related doctrine." *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 439 (5th Cir. 2022). The Ninth Circuit has not provided an in-depth explanation of this doctrine. *Id.* Instead, the Ninth Circuit has merely instructed that litigation involving issues "closely related to the contractual relationship" may be sufficient for a non-signatory

to invoke a forum selection clause.  *See also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (concluding non-signatories could invoke forum selection clause because there was a "larger contractual relationship" governed by a forum selection clause).  The contexts in which courts allow non-signatories to invoke such clauses are quite different from what has been alleged in this case.

The closely-related doctrine may apply when there is a significant relationship such as common ownership or control between the non-signatory and one of the signatories. *Franlink*, 50 F.4th at 440.  For example, in *Manetti-Farrow* the Ninth Circuit allowed a variety of related companies and high-ranking individuals in those companies to invoke a forum selection clause in a contract executed by only one of the related companies.  858 F.2d at 514 n.5.  Alternatively, the closely-related doctrine may apply when a non-signatory was involved in negotiating the contract containing the forum selection clause.  *See, e.g.*, *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018).  Such involvement often means it was "foreseeable" the non-signatory would be subject to the forum selection clause.  *Id.* at 64.  Nothing like these two applications is present here.

Plaintiff has not alleged it has an ownership interest or affiliation with GoDaddy, Domains by Proxy, or the unknown individuals.  Nor has Plaintiff alleged it was involved in the contract negotiations between the unknown individuals, GoDaddy, and Domains by Proxy.  Instead of citing to any relationship with a signatory or involvement in the negotiations, Plaintiff seems to argue the contractual language itself establishes the unknown individuals consented to be sued in Arizona for all claims connected to use of the domain names.

Plaintiff cites contractual language that the unknown individuals agreed "any action relating to or arising out of this Agreement," must be brought in Arizona.  (Doc. 15 at 3).  Plaintiff does not explain, however, how its disputes with the unknown individuals relate to or arise out of the agreements.  In general, disputes relate to or arise out of an agreement when the dispute will require interpretation of the agreement's language.  *See Manetti-Farrow* 858 F.2d at 514 (9th Cir. 1988) ("Whether a forum selection clause applies to tort

claims depends on whether resolution of the claims relates to interpretation of the contract."); *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009) (claims did not "arise out of or relate directly to" agreement because claims did not require "examination of any provisions" of the agreement). Plaintiff's position that all possible disputes with non-signatories that have some connection to the domain names must be brought in Arizona would stretch the contractual language too far. *Cf. Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785, 792 (4th Cir. 2023) ("GoDaddy's Registration Agreement does not require the registrant to submit to jurisdiction in Arizona for *all* legal disputes.").

The only support Plaintiff cites for its position is *Productive People, LLC v. Ives Design*, 2009 WL 1749751, at *2 (D. Ariz. June 18, 2009). That case, however, involved different contractual language than what is found here. The contractual language in *Productive People* stated the forum selection clause would apply to any litigation involving "use of" the domain name. *Id.* There is no such language here. And without similar language, *Productive People* does not help Plaintiff. Accordingly, Plaintiff is not entitled to invoke the forum selection clauses in the unknown individuals' agreements with non-parties.

In amending its complaint Plaintiff alleged in rem claims against the five domain names. Such claims require allegations "the domain name violates any right of the owner of a mark." 15 U.S.C. § 1125(d)(2)(A)(i). "Domain name" is statutorily defined as "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 U.S.C.A. § 1127. Thus, the statute uses "domain name" to refer to the "electronic address" of a website, not the contents of the website found at that address. Based on that, Plaintiff's allegations that the five domain names present a plausible basis for in rem jurisdiction under 15 U.S.C. § 1125 is puzzling.

The Temu marks use the word "temu," while the domain names identified in the complaint contain nothing similar. The five allegedly violative domain names are:

- employerdictionary.com;
- cryptocurrencybettting.com;
- comboarchives.com;
- toughestgirlalive.com; and
- myelectronicshub.website.

Plaintiff alleges these domain names are "identical and confusingly similar to the TEMU Marks or use the TEMU Marks," but Plaintiff has not explained what aspect of these domain names it is claiming as "identical and confusingly similar." (Doc. 16 at 13). Instead of the domain names using the Temu marks, Plaintiff's allegations are that the websites found at those addresses are misusing the Temu marks. Plaintiff has not cited any authority that 15 U.S.C. § 1125(d)(2)(A)(i) allows for in rem claims against domain names based exclusively on the content of the websites.

Plaintiff is entitled to protect its trademarks and, assuming the unknown individuals are misusing the Temu marks, Plaintiff likely is entitled to relief in some forum. But the Court cannot grant an injunction against the unknown individuals without a plausible basis for concluding it has personal jurisdiction over those individuals. Plaintiff is free to file a renewed motion for injunctive relief if it can make a minimal showing of personal jurisdiction over the unknown individuals.[1] Alternatively, Plaintiff may file a renewed motion identifying the legal authority that would allow the Court to exercise in rem jurisdiction over domain names that bear no resemblance to the Temu marks.

Accordingly,

…

…

…

---

[1] The need to establish personal jurisdiction will remain even if Plaintiff does not renew its request for injunctive relief. Assuming Plaintiff is able to complete service of process but the unknown individuals do not appear, Plaintiff will need to establish personal jurisdiction before the Court could enter default judgment. "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**IT IS ORDERED** the Motion for Temporary Restraining Order (Doc. 10) is **DENIED WITHOUT PREJUDICE**.

Dated this 4th day of December, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge